**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
DIVISION**

**KAYLA CLARK, ADMINISTRATRIX AND
ON BEHALF OF ALL HEIRS AT LAW
AND WRONGFUL DEATH
BENEFICIARIES OF JONATHAN
SANDERS, DECEASED**                                                                           **PLAINTIFF**

**v.**                                               **CIVIL ACTION NO. 2:16-CV-101-KS-MTP**

**KEVIN HERRINGTON, et al.**                                                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss Based on Qualified Immunity ("Motion to Dismiss") [35] filed by Defendants Kevin Herrington, City of Stonewall, Alderman Ricky Carpenter, Alderman Jerry Rich, Alderman Ferry H. Adams, Alderman Fred A. Frey, Jr., Alderman Stacy Artigue, Mayor Glenn A. Cook, and Police Chief Michael S. Street, and the Motion for Discovery on the Issue of Qualified Immunity, Pursuant to F.R.Civ.P. 56(f) ("Motion for Discovery") [41] filed by Plaintiff Kayla Clark. After reviewing the submissions of the parties, the record, and the applicable law, the Court finds that the Motion to Dismiss [35] should be granted in part and denied in part. The Court further finds that the Motion for Discovery [41] should be denied as moot.

**I. BACKGROUND**

Plaintiff Kayla Clark ("Plaintiff"), Administratrix and on behalf of all Heirs at Law and Wrongful Death Beneficiaries of Jonathan Sanders, Deceased, filed this action on June 30, 2016. She filed her Amended Complaint [32] on October 28, 2016. In her Amended Complaint [32], Plaintiff brings suit against Defendants[1] Kevin Herrington ("Herrington"), City of Stonewall (the

---

[1] Collectively referred to as "Defendants."

"City"), Alderman Ricky Carpenter, Alderman Jerry Rich, Alderman Ferry H. Adams, Alderman Fred A. Frey, Jr., Alderman Stacy Artigue (collectively the "Aldermen"), Mayor Glenn A. Cook ("Mayor Cook"), and Police Chief Michael S. Street ("Chief Street"). Plaintiff brings claims under 42 U.S.C. § 1983, as well as multiple state law claims, centered around the death of Jonathan Sanders ("Sanders"). The claims against Herrington are brought in his official and individual capacities, while the claims against the Aldermen, Mayor Cook, and Chief Street are brought only in their individual capacities.

Plaintiff alleges that on the night of July 8, 2015, Sanders was lawfully riding a horse-drawn buggy when he was stopped by Herrington, who was working as a police officer for the City, though he had yet to undergo training at the police academy and was patrolling without supervision. (*See* Amended Complaint [32] at ¶¶ 15, 38.) At some point during the encounter, Herrington placed Sanders in a chokehold. Plaintiff alleges that Sanders died as a result of this chokehold. Plaintiff claims that Sanders's constitutional rights were violated by Herrington because he stopped Sanders without cause, unreasonably placed him in a chokehold, and, after rendering Sanders unconscious, refused to allow anyone to administer CPR until an ambulance arrived on scene.

## II.  MOTION TO DISMISS [35]

### A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (punctuation omitted). "To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). The Court must "accept all well-

pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* But the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Likewise, "a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

### B. § 1983 Claims

#### 1. Qualified Immunity Standard

Qualified immunity protects government officials sued under 42 U.S.C. § 1983 in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)). This doctrine, where applicable, is a bar to suit altogether "rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)). The Supreme Court has explained that "the driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* at 231-32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2, 107 S. Ct. 3034, 97 L.Ed.2d 23 (1987)) (internal quotations omitted and alteration in original).

There are two steps in deciding whether qualified immunity applies. *Id.* at 232. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d

272 (2001)) (internal citations omitted).  If the plaintiff can establish this, then "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*  If both steps are satisfied, qualified immunity does not apply.

### 2. Defendant Herrington

Defendants' arguments for the qualified immunity of Herrington rests upon a misreading of the allegations in Plaintiff's Amended Complaint [32] and an argument that the Court should not accept the allegations as true.  First, Defendants argue that Plaintiff admits in her Amended Complaint [32] that Herrington pulled Sanders over because of a drug tip.  Defendants go on to contend that Plaintiff admitted that the physical assault against Sanders occurred after he reached for Herrington's gun.  Plaintiff, however, alleges in her pleading that Herrington made up this drug tip and the idea of Sanders reaching for his gun after the incident in order to justify his actions. (*See* Amended Complaint [32] at ¶¶ 17-19, 21.)

Next, Defendants argue that the Court, contrary to the standards under Rule 12(b)(6), cannot accept the allegations that Herrington "made up" reasons as true because doing so would require the Court "believe in some sort of unfounded, unspecific and improperly alleged conspiracy without any particular facts whatsoever."  (Memo. in Support [36] at p. 16.) Defendants' arguments here seem to be premised on the idea that, because Plaintiff has given no other motive in her Amended Complaint [32] that would explain why Herrington pulled Sanders over and utilized force against him, she has failed to plead with specificity her claims.  Defendants have not, however, cited any precedent that would require Plaintiff, as an element of her

4

constitutional claims, prove *why* Herrington would violate Sanders's rights. She is only required to establish that his actions were constitutional violations.[2]

Therefore, because Defendants have not shown the Court that Herrington, based on the actual allegations in the Amended Complaint [32], is entitled to qualified immunity, the Motion to Dismiss [35] will be **denied** with respect to the § 1983 claims against him in his individual capacity.

However, insofar as Plaintiff brings a claim against Herrington under § 1983 in his official capacity, the Motion to Dismiss [35] will be **granted** because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989) (citations omitted). As such, the claims against Herrington in his official capacity is the equivalent to a suit against the City, and these claims are duplicative of the § 1983 brought against the City itself. As such, they will be **dismissed with prejudice**.

### 3.     The Aldermen, Mayor Cook, and Chief Street

Plaintiff's claims against the Aldermen, Mayor Cook, and Chief Street are brought against them in their individual capacities. "Supervisory officers, like the defendant officials, cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability" but they "may be liable when enforcement of a policy or practice results in a deprivation of federally protected rights." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) (citations omitted). Because of "the close relationship between the elements of municipal liability and an

---

[2] Defendants do not specifically address any of the actions alleged to be constitutional violations in Plaintiff's Amended Complaint [32], nor do they address the specific elements of the alleged constitutional violations. The Court declines to address arguments not made.

individual supervisor's liability," the Fifth Circuit has held that that a supervisory official may be individually liable under § 1983 when "that official demonstrates a deliberate indifference to a plaintiff's constitutionally protected rights." *Id.* (citing *Doe v. Taylor*, 15 F.3d 443, 453 (5th Cir. 1994)). For these officials to be held liable, Plaintiff must allege that their "wrongful actions were causally connected to the deprivation" of Sanders' rights. *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)). However, "[a] supervisor is not personally liable for his subordinate's actions in which he had no involvement." *Id.*

Plaintiff alleges that the Aldermen, Mayor Cook, and Chief Street "were all aware that Herrington was untrained and that he had been given a city vehicle, a city weapon, a uniform and badge, and then placed on duty by himself at night without supervision." (Amended Complaint [32] at ¶ 44.) Plaintiff further alleges that these officials implemented a practice to not train their officers and that "[t]his practice directly resulted in the death of Mr. Sanders." (*Id.*) Based on these allegations, the Court must find that Plaintiff has adequately pleaded her § 1983 claims against the Aldermen, Mayor Cook, and Chief Street in their individual capacities, and the Motion to Dismiss [35] will be **denied** as to these claims.

### 4. The City

Under *Monell v. Department of Social Services*, the City is not liable under § 1983 "solely because its employee committed a constitutional tort." *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (citing *Monell v. Dep't of Soc. Servs.*, 436 U. S. 658, 691, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)). Rather, "for a municipality to be liable, the plaintiff must show that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation." *Duvall v. Dallas Cnty.,*

*Tex*, 631 F.3d 203, 209 (5th Cir. 2011). Under this analysis, Plaintiff must show both "causation and culpability." *Mason*, 806 F.3d at 280. There must be a "direct causal connection . . . between the policy [or custom] and the alleged constitutional deprivation." *Id.* (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)). Additionally, "[u]nder the culpability requirement, if the policy is facially lawful, a plaintiff must also show that the municipality promulgated [the policy] with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Id.* (quoting *Piotrowski*, 237 F.3d at 579) (internal quotations omitted) (alteration in original).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L.Ed.2d 417 (2011). To be liable, the failure to train "must amount to deliberate indifference to the rights of person with whom the [untrained employees] come into contact." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)) (alteration in original). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997)). Decisionmakers must have "notice that a course of training is deficient in a particular respect" in order to be liable under a failure-to-train theory. *Id.*

Plaintiff has alleged that Herrington was not trained prior to the incident that resulted in Sanders's death and that the City "has a practice of allowing untrained officers to patrol its streets" and that this practice "directly resulted in the death of Mr. Sanders." (*Id.* at ¶¶ 44, 48.) Plaintiff further alleges that the City's practice of not training its officers "has resulted in a reputation of use of force and violent behavior in the community" and "has resulted in excessive force by

7

Stonewall police officers depriving citizens of rights, privileges, and immunities." (Amended Complaint [32] at ¶¶ 67-68.) The Court finds that these allegations are enough to properly plead that the City has adopted an unofficial custom to not train its officers, which was the moving force behind the alleged violations of Sanders's rights. *See Duvall*, 631 F.3d at 209. Furthermore, because Plaintiff has alleged that this practice has resulted in a reputation of constitutional violations, the Court finds that she has adequately pleaded that the City had notice. As such, the Court will **deny** Defendants' Motion to Dismiss [35] with respect to the § 1983 claims against the City.

    **C.**    **State Claims**

        **1.**    **Claims of Negligence**

Plaintiff brings state law claims of negligence, negligent infliction of emotional distress, and wrongful death against all Defendants. The Mississippi Tort Claims Act ("MTCA") "is the exclusive civil remedy against a governmental entity or its employee[s] for tortious acts or omissions which give rise to a suit." *Elkins v. McKenzie*, 865 So.2d 1065, 1078 (Miss. 2003). Under the MTCA,

> [a] government entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of any act or omission of an employee of a government entity engaged in the performance of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity.

Miss. Code Ann. § 11-46-9(1)(c). The Mississippi Supreme Court has held that "reckless disregard is a higher standard than gross negligence." *City of Jackson v. Lipsey*, 834 So.2d 687, 691 (Miss. 2003) (quoting *Turner v. City of Ruleville*, 735 So.2d 226, 229-30 (Miss 1999)). Though Plaintiff takes pains to stress that she "do[es] not make claims sounding in negligence against the Defendants in their individual capacities," (Amended Complaint [32] at ¶¶ 84, 89), her claims of

negligence, negligent infliction of emotional death, and wrongful death are all premised on the alleged "negligent actions of the defendants" and the negligence of the City.  (*Id.* at ¶¶ 84, 89, 91.) Because these claims are based in allegations of negligence, the City and its officials are immune under MTCA.  Therefore, the Motion to Dismiss [35] will be granted with respect to Plaintiff's claims of negligence, negligent infliction of emotional death, and wrongful death, and they will be **dismissed with prejudice**.

### 2. Assault and Battery

Plaintiff also brings a state court claim of assault and battery against Herrington.  Under the MTCA, a government employee is not acting within the course and scope of his employment, and thus outside the scope of the MTCA, when his actions "constitute[] fraud, malice, libel, slader, defamation or any criminal offense other than traffic violations."  Miss. Code Ann. § 11-46-5(2). Assault and battery is potentially a criminal offense, to which Herrington would not be immune under the MTCA.  Therefore, the Court will **deny** the Motion to Dismiss [35] with respect to this claim.

### III.  MOTION FOR DISCOVERY [41]

In her Motion for Discovery [41], Plaintiff seeks discovery on the issue of qualified immunity.  Because the Court has ruled in her favor on this issue without the benefit of discovery, it finds that the Motion for Discovery [41] should be **denied as moot**.

### IV.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss [35] is **granted in part** and **denied in part**.

9

It is **granted** in that the § 1983 claims against Herrington in his official capacity and the state law claims of negligence, negligent infliction of emotional distress, and wrongful death against all Defendants are **dismissed with prejudice**.

It is **denied** in that the following claims remain pending: the § 1983 claims against Herrington in his individual capacity, the § 1983 claims against the Aldermen, Mayor Cook, and Chief Street in their individual capacities, the § 1983 claims against the City, and the assault and battery claim against Herrington.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion for Discovery [41] is **denied as moot**.

SO ORDERED AND ADJUDGED, on this, the ___14th___ day of March, 2017.

    ___s/ Keith Starrett_____
    KEITH STARRETT
    UNITED STATES DISTRICT JUDGE